## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 26 2017, 10:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Troy D. Warner
Deputy Public Defender
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Betts,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | October 26, 2017<br><br>Court of Appeals Case No.<br>71A05-1705-CR-1154<br><br>Appeal from the St. Joseph Superior Court<br><br>The Honorable Margot F. Reagan, Judge<br><br>The Honorable Elizabeth A. Hardtke, Magistrate<br><br>Trial Court Cause No.<br>71D04-1610-CM-5039 |

**Crone, Judge.**

# Case Summary

Christopher Betts appeals his conviction, following a bench trial, for class A misdemeanor invasion of privacy. The sole issue presented for our review is whether the evidence is sufficient to support his conviction. Finding the evidence sufficient, we affirm.

# Facts and Procedural History

Betts and A.R. were in a relationship for ten years and have one daughter, H.B., born on September 4, 2006. The relationship ended, and on October 6, 2014, the St. Joseph Circuit Court issued a protective order under cause number 71C01-1409-PO-1190. The order prohibited Betts from "threatening to commit or committing acts of domestic or family violence, stalking or sex offenses against [A.R.] and the following designated family or household members … [H.B.] …." State's Ex. A. The order further ordered Betts "to stay away from the following place(s) that is/are frequented by [A.R.] and/or [A.R.'s] family or household members: … Martin Luther King Center." *Id.* The sheriff served the order by hanging "a copy on door" at 3530 Northside Boulevard, Apartment 4, Betts's last known address, on October 8, 2014. State's Ex. B.

H.B. had been attending after-school care at the Martin Luther King Center since before the protective order was entered. A.R. provided a copy of the protective order and Betts's picture to the center. In September 2015, Betts called A.R. and asked her if he could see H.B. for her birthday. A.R. discussed

the protective order with Betts, and Betts knew that he was not permitted to see his daughter pursuant to the order.

[4] On April 28, 2016, Betts went to the Martin Luther King Center during the after-school hours. The director of the center, Josephine Merriweather, asked Betts if she could help him. She noticed that Betts kept staring at the children through the window separating the lobby area from the gym where the children were playing. Betts told Merriweather that he was interested in lifting weights and perhaps a membership to the center. During their conversation, Betts kept looking through the window toward the children. Merriweather got a "funny feeling" and went to find her file containing a copy of the protective order and Betts's picture. Tr. at 33. Merriweather then asked Betts if he was H.B.'s father. Betts responded, "Yes," and stated, "I just want to see my daughter." *Id*. Merriweather told Betts to leave or she would call the police. Betts exited the property.

[5] Thereafter, the State charged Betts with one count of class A misdemeanor invasion of privacy for violating the protective order. Following a bench trial, the trial court found Betts guilty as charged and sentenced him to ninety days in the St. Joseph County Jail. This appeal ensued.

## Discussion and Decision

[6] Betts contends that the State presented insufficient evidence to support his conviction. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495,

499 (Ind. 2015). We look to the evidence and reasonable inferences drawn therefrom that support the conviction, and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id*. In short, if the testimony believed by the trier of fact is enough to support the conviction, then the reviewing court will not disturb it. *Id*. at 500.

[7] To convict Betts of invasion of privacy, the State was required to prove that he knowingly or intentionally violated a protective order to prevent domestic or family violence issued under Indiana Code Chapter 34-26-5. *See* Ind. Code § 35-46-1-15.1(1). A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. Ind. Code § 35-41-2-2(a). Betts contends that there is insufficient evidence that he knowingly violated the protective order because the State failed to prove that he had knowledge of the existence of the protective order prohibiting him from going to the Martin Luther King Center, and further that there was no evidence that his daughter, H.B., was present at the Martin Luther King Center on the day in question. We find the first argument unpersuasive and the second argument irrelevant.

[8] Regarding his first argument, the protective order issued here specifically provided that, in addition to staying away from A.R. and H.B., Betts was "ordered to stay away from the following place(s) that is/are frequented by [A.R.] and/or [A.R.'s] family or household members: … Martin Luther King Center." State's Ex. A. The State presented evidence that the protective order

was served by copy service at Betts's known legal address at the time it was issued.[1] The trial court did not find credible Betts's assertions that he was unaware of the protective order because he had moved from the Northside Boulevard address just prior to the issuance of the order. Indeed, the record indicates that the Northside Boulevard address is currently still listed by the Bureau of Motor Vehicles as Betts's legal address. Further, A.R. testified that she spoke with Betts in 2015, that they discussed the protective order, and that Betts was aware of its existence. Again, the trial court did not find credible Betts's claims that he had no idea he was prohibited from going to the Martin Luther King Center or even that his daughter attended after-school care at the facility. His evasive behavior while at the center undermines the credibility of his testimony and supports the trial court's determination. The State presented substantial evidence of probative value from which the trier of fact could infer that Betts had knowledge of the protective order and its terms.

[9] Moreover, contrary to Betts's argument, the State was not required to prove that H.B. was present at the center when he went there. The protective order did not require that H.B. be present at the Martin Luther King Center for Betts to be in violation of the order by going to the center, as he admits to doing. Rather the protective order specifically states that Betts must stay away from the center as a place "frequented by" H.B. *Id.* Thus, any alleged lack of proof that

---

[1] Betts complains that the State failed to prove that the sheriff complied with Indiana Trial Rule 4.1(B) and also mailed a copy of the protective order. We note that Indiana courts have held that proper service of an ex parte order is not required to prove that a respondent has knowledge of the order. *Joslyn v. State*, 942 N.E.2d 809-11 (Ind. 2011).

H.B. was present at the center when Betts went there is immaterial. Regardless, in addition to Betts's admission that he went to the center on the afternoon in question, there was sufficient evidence from which a reasonable trier of fact could infer that H.B. was present at that time. The record indicates that H.B. had been attending the Martin Luther King Center for after-school care since before the protective order was issued and that Betts specifically went to the center during after-school hours. Betts himself testified that while he was at the center, he saw a child whom he believed to be his daughter waving to him through the lobby window.

[10] We reject Betts's invitation for us to reweigh the evidence and reassess witness credibility. The State presented sufficient evidence to support Betts's conviction for invasion of privacy. Accordingly, we affirm the conviction.

[11] Affirmed.

Vaidik, C.J., and Mathias, J., concur.